Peter A. Schey (Cal Bar #58232)
Carlos Holguin (Cal Bar # 90754)
Center for Human Rights and Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
Telephone: (213) 388-8693, ext. 304
Facsimile: (213) 386-9484

Jim Tom Haynes (D.C. Bar #340422)
1555 Connecticut Ave NW
Suite 200
Washington, DC 20036
Telephone: (202) 293-3123
Facsimile: (202) 293-6230

*Attorneys for Plaintiffs*

**FILED**

**MAY 16 2008**

**Clerk,** U.S. District and
**Bankruptcy Courts**

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEXAS BORDER COALITION<br>100 S. MONROE ST.<br>EAGLE PASS, TEXAS 78852<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL CHERTOFF, SECRETARY,<br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY;<br>ROBERT F. JANSON, ACTING EXECUTIVE<br>DIRECTOR, ASSET MANAGEMENT OF<br>U.S. CUSTOMS AND BORDER<br>PROTECTION.<br><br>Defendants. | Case: 1:08-cv-00848<br>Assigned To : Walton, Reggie B.<br>Assign. Date : 5/16/2008<br>Description: General Civil<br><br>§<br>§ COMPLAINT FOR INJUNCTIVE<br>§ AND DECLARTORY RELIEF<br>§ [CLASS ACTION]<br>§<br>§<br>§<br>§ |

I

PRELIMINARY STATEMENT

1. This action is brought by the Texas Border Coalition ("TBC"), a group of cities, counties, Chambers of Commerce, and Economic Development Commissions located proximate to the border between the United States and Mexico in the State of Texas. Some city and county member entities also own property along the United States-Mexico border, property that is in the path of a fence or wall defendants propose to build to secure the U.S.-Mexico border. Defendants have served member entities of the TBC with notices of a purported "Right-of-Way for Survey and Site Assessment" and "Certificate of Acceptance" pursuant to the Declaration of Taking Act, 40 U.S.C. §§ 3114 *et seq.*, (DTA). Defendants have sued member city Eagle Pass under the DTA to obtain a right of way for the border fence through city property. *See United States v. 233.0 Acres of Land, More or Less Situate in Maverick County, State of Texas and City of Eagle Pass,* Case No. Civ 08-CA-003, United States District Court, Western District of Texas, Del Rio Division. In said notices, the U.S. Department of Homeland Security and U.S. Customs and Border Protection demand immediate access to land, the right to demolish structures, bore holes, destroy plantings and crops, and take such other measures as contractors of the Department of Homeland Security may consider necessary to prepare for construction of a fortified border wall or fence.

2. Defendant Secretary CHERTOFF and his agents, have acted in disregard of the laws of the United States in pushing forward a plan to build at least 70 miles of border wall in the Rio Grande Valley area in the vicinity of Roma, Rio Grande City, McAllen, Progreso, Mercedes, Harlingen, and Brownsville, Texas, over private and non-federal public lands without, *inter alia,* permitting lawful landowners to fix a price for such interest in land or determining in good faith whether that price is reasonable.

Complaint

3. Defendants have demanded and continue to demand that property owners, including plaintiffs in this case, execute waivers of their property rights for six months and have threatened to sue and sued property owners who declined to execute such waivers, under the DTA, an expedited condemnation proceeding. However, Congress directed defendants to negotiate in good faith with property owners in an effort to reach a reasonable price for the property interest they seek before moving to condemn their land. If defendants and landowner are unable to agree on a reasonable price for the interest defendants seek, then Congress directed that defendants proceed through the "straight-condemnation" procedure prescribed in 40 U.S.C. § 3113 and Federal Rule of Civil Procedure 71A, and not use the DTA. Congress has directed that DHS acquire temporary or other interests in land "pursuant to the Act of August 1, 1888 (Chapter 728; 25 Stat. 357)," *codified at* 40 U.S.C. § 3113. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), §102(b)(2) and (d). These provisions require that Secretary Chertoff clearly define the interest he seeks in real property, something he has failed to, and then attempt with the lawful owner of the interest to "fix[ ] a price for it," which he has also failed to do, and if a price is agreed upon, to then purchase the interest, which he has never done, and if a price is not agreed upon, to proceed with the condemnation under 40 U.S.C. § 3113, which he has also failed to do.

4. While purporting to act pursuant to the land acquisition provisions in § 102 of the IIRIRA, Defendants have approached a large number of border property owners such as member entity City of Eagle Pass and demanded that they "voluntarily" execute a six-month right-of-way for survey and site assessment and certificate of acceptance, in essence permitting access to property owners' land for six months and the right to move structures and vegetation, store vehicles and equipment, and bore holes, without informing them that the statute being relied upon to seek the right of entry also requires that the parties seek to arrive at a fixed reasonable price for the property interest wanted by the government. Border property owners have executed

six-month right-of-way agreements for survey and site assessment and certificates of acceptance without being informed of their rights under § 102 of the IIRIRA, and the waivers they have signed were not knowingly and intelligently executed, are invalid, and should be rescinded.

5. Secretary Chertoff has also failed to comply with the consultation requirement of the Consolidated Appropriations Act, 2008, Pub.L. 110-161, 121 Stat. 1844 (2007), §564(2)(C)(i), which requires consultation with private property owners and cities and other stake-holders to minimize the impact on the environment, culture, commerce, and quality of life for the communities and residents located near the sites at which activities relating to border fencing may occur.

5. Secretary Chertoff has also ignored the new mandate in the recently enacted Consolidated Appropriations Act which repeals the Congressional mandate issued a year earlier in the Secure Fence Act of 2006 that Secretary Chertoff *must* build a segment of the border fence in the Rio Grande Valley area in the vicinity of Roma, Rio Grande City, McAllen, Progreso, Mercedes, Harlingen, and Brownsville, Texas. Instead, the new statute grants the Secretary discretion, which must be exercised reasonably, regarding the location of border fencing. In the process of consultation with stake-holders identified in the statute, and consideration of their legitimate concerns regarding adverse impacts on the environment, culture, economics, and their way of life, as required by the statute, the Secretary must consider that he is no longer required by Congress to build the border fence in the 70 mile area in the Rio Grande Valley identified in the now repealed provisions of the Secure Fence Act.

6. Defendants have failed to issue or make known to border property owners any rules, guidelines, instructions, directives or policies relating to the process of negotiation required by § 102 of the IIRIRA or how the government will arrive at its position on a fixed price for the property interest sought. As a matter of Fifth Amendment due process and fundamental fairness, and to avoid arbitrary decision-

making, plaintiffs and their putative class members are entitled to know the rules, guidelines, instructions, directives or policies relating to the process of negotiation required by § 102 of the IIRIRA and how the government will arrive at its position on a fixed price for the property interest sought from plaintiffs and putative class members both to survey and eventually to actually build a border wall.

7. Media reports indicate that while defendants plan to build a border wall through plaintiff member entities' property, it will stop at places like the edge of the River Bend Resort and golf course, a popular winter retreat. The wall starts up again on the other side of the resort. *See, e.g.,* Texas Observer, *Holes in the Wall: Homeland Security won't say why the border wall is bypassing the wealthy and politically connected.*[1] Also in the vicinity, reportedly there are no plans to build the border fence through the property owned by Dallas billionaire Ray L. Hunt and his relatives. *Id.* Hunt, who is reported to be a close friend of President George W. Bush, recently donated $35 million to Southern Methodist University to help build Bush's presidential library. *Id.* Chad Foster, the mayor of Eagle Pass and chairman of the TBC, says he has never received any logical answers from defendants as to why certain areas in his city have been targeted for fencing over other areas: "I puzzled a while over why the fence would bypass the industrial park and go through the city park." *Id.* On information and belief, the border security measures at issue here are being coordinated and managed by the Secure Border Initiative Office ("SBI") within the U.S. Customs and Border Protection of the Department of Homeland Security. In testimony before Congress in February 2007, the U.S. General Accounting Office reported that SBI's border "expenditure plan, including related documentation and program officials' statements, lacked specificity on such

---

[1]  http://www.texasobserver.org/article.php?aid=2688.

Complaint

things as planned activities and milestones ... and expected mission outcomes."[2] As a matter of Fifth Amendment equal protection, plaintiffs and their putative class members are entitled to equal treatment under the law and in all activities undertaken by defendants to acquire land for border security pursuant to the IIRIRA.

8. The Government policies and practices challenged in this action are common to all property owners on the planned 70-mile fence, and plaintiffs therefore seek the issuance of temporary and permanent injunctive and declaratory relief to require that Secretary Chertoff and his agents act in full compliance with federal laws regarding construction of a border fence.

## II

### JURISDICTION, VENUE, WAIVER OF IMMUNITY

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1358 (condemnation), 1361 (mandamus jurisdiction) and 5 U.S.C. §§ 702 *et seq.*

10. Declaratory judgment is sought pursuant to 28 U.S.C. §§ 2201-023. Venue is properly in this district pursuant to 28 U.S.C. § 1391(b) and (e)(2).

## III

### PARTIES

11. Plaintiff TBC is a coalition of mayors, cities, counties, Chambers of Commerce and Economic Development Communities located along the United States – Mexico border in Texas. The TBC was founded in 1998 and is committed to providing a better quality of life for the residents of the Texas-Mexico border region by providing economic development opportunities and sustainable incomes in a healthy and safe

---

2

http://209.85.173.104/search?q=cache:7zSRg47zizEJ:www.gao.gov/new.items/d07504t
.pdf+General+accounting+office+Secure+Border+Initiative&hl=en&ct=clnk&cd=1&gl=
us

Complaint

environment, facilitating commerce between Texas and Mexico, advocating for funding needed in the border region for federal and state investments and incentives in transportation, ports of entry, jobs and education, healthcare and other matters considered vital to the fulfillment of the mission of the TBC.

12. TBC's member cities are Laredo, Rio Grande City, Mission, Hidalgo, Harlingen, Alamo, Eagle Pass, San Juan, Brownsville, Roma, Edinburg, Mercedes, El Paso, Pharr, McAllen, Port Isabel, Del Rio, La Joya, Weslaco. All member cities are located in Texas. TBC's member counties are Cameron, El Paso, Hidalgo, Starr, Webb, Dimmit, Maverick, Val Verde, Zapata, and Terrell. All member counties are located in Texas.

13. The Executive Committee members of the Texas Border Coalition are Mayor Pat Ahumada, City of Brownsville, Mayor Efrain Valdez, City of Del Rio, Mayor John F. Cook, City of El Paso, Mayor Chris Boswell, City of Harlingen, Mayor Raul G. Salinas, City of Laredo, Mayor Richard Cortez, City of McAllen, Mayor Kevin Hiles, City of Rio Grande, Mayor Norberto Salinas, City of Mission, Mayor Rogelio Ybarra, City of Roma, Mayor John David Franz, City of Hidalgo, Judge Jose Aranda, Jr., Maverick County, Judge Carlos H. Cascos, Cameron County, Judge J.D. Salinas, Hidalgo County

14. The Chairman of the Texas Border Coalition is Mayor Chad Foster, City of Eagle Pass. The member Chambers of Commerce are Alamo, Chamber of Commerce, Brownsville Chamber of Commerce, Corpus Christi Chamber of Commerce, Del Rio Chamber of Commerce, Dimmit Chamber of Commerce, Donna Tourist Center, Eagle Pass Chamber of Commerce, Edinburg Chamber of Commerce, Grater El Paso Chamber of Commerce, Harlingen Area Chamber of Commerce, Hidalgo Chamber of Commerce, Laredo Webb Chamber of Commerce, McAllen Chamber of Commerce, Mercedes Ara Chamber of Commerce, Mission Chamber of Commerce, Pharr Chamber of Commerce, RGV partnership/Chamber of Commerce, Roma Chamber of Commerce, San Juan

Complaint

Chamber of Commerce, SPI Chamber of Commerce, Weslaco Area Chamber of Commerce..

15. The member Economic Development Commissions are Brownsville Economic Development Council, Donna Economic Development Council, Edinburg Economic Development Corporations, Laredo Development Foundation, Lower Rio Grande Development Council, Maverick County Development Council, McAllen Economic Development Council, Middle Rio Grande Development Council, Mission Economic Development Authority, Penitas Economic Development Corporation, Pharr Economic Development Corporation, Rio Grande City Economic Development Corporation, Roma Economic Development Corporation, San Benito Economic Development Corporation, SPI Economic Development Corporation, Mercedes Economic Development Corporation, Weslaco Economic Development and Port Isabel Economic Development Corporation.

16. Defendant Michael CHERTOFF is the Secretary of the United States Department of Homeland Security. Defendant CHERTOFF is charged with the implementation of the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.*, and with the administration and oversight of the construction of the border security fence/wall. He is sued in his official capacity.

17. Defendant Robert F. JANSON is the Acting Executive Director, Asset Management, U.S. Customs and Border Protection and is charged with oversight of the construction of the border security fence/wall and has authorized the filing of condemnation actions against landowners along the United States-Mexico border. He is sued in his official capacity.

IV

CLASS ALLEGATIONS

18. Plaintiff brings this action for injunctive and declaratory relief on behalf of itself, its members, and all other persons or entities similarly situated pursuant to

- 8 -                                    Complaint

Fed.R.Civ.Proc. Rule 23(a) and 23(b)(2). Plaintiff provisionally proposes this action be certified on behalf of the following class:

> Owners of real property along the United States-Mexico border who have been served by defendants with a "Right-of-Way for Survey and Site Assessment" and "Certificate of Acceptance" or similar documents or sued under the Declaration of Taking Act, 40 U.S.C. § 3114, and whom the government has not negotiated with pursuant to § 102(b)(2) and (d) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 regarding a fixed price for the property interest sought by the government, or who have not been consulted pursuant to Section 564 (a)(2)(C)(i) of the Department of Homeland Security Appropriations Act of 2008.

19. Members of the proposed class likely exceed one hundred and are so numerous that joinder of all members is impracticable. The claims of the proposed class representative and those of the proposed class members raise common questions of law and fact concerning, *inter alia*, (i) whether the IIRIRA §102 (b)(2) and (d) require that Secretary Chertoff clearly define the interest he seeks in real property and then attempt with the lawful owner of the interest to fix a price for it, (ii) whether the Consolidated Appropriations Act, 2008, § 564(2)(C)(i), requires consultation with properties owners to minimize the impact border fencing on the environment, culture, commerce, and quality of life for the communities and residents before the Secretary seizes property owners' lands located near the sites at which border fencing may be constructed, (iii) whether the IIRIRA precludes defendants from using the Declaration Act to obtain an interest in class members' property through demand notices or ex parte applications filed in the courts, (iv) whether defendants' failure to issue rules, guidelines, instructions or policies relating to the process of negotiation required by § 102 of the IIRIRA or how the government will arrive at its position on a fixed price for the property interest sought violates Fifth Amendment due process, and (v) whether defendants have violated plaintiff's right to equal protection by failing to issue rules, guidelines, instructions or policies relating to the standards the government uses to arrive at a fixed price for the property interest sought or in their selection of properties subject to demands for right of access to survey for a border fence.

Complaint

20. These questions are common to the plaintiff, the plaintiff's members, and to the members of the proposed class because defendants have acted and will continue to act on grounds generally applicable to both the named plaintiff, the named plaintiff's plaintiffs' members, and proposed class members. The claims of the proposed class members and those of the plaintiff and plaintiff's members are typical of the class claims.

21. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for defendants. Prosecution of separate actions would create the risk that individual class members will secure court orders that would as a practical matter be dispositive of the claims of other class members not named parties to this litigation, thereby substantially impeding the ability of unrepresented class members to protect their interests.

22. Defendants, their agents, employees, and predecessors and successors in office have acted or refused to act, and will continue to act or refuse to act, on grounds generally applicable to the class, thereby making appropriate injunctive relief or corresponding declaratory relief with respect to the class as a whole. Plaintiff will vigorously represent the interests of unnamed class members. All members of the proposed class will benefit by the action brought by the plaintiff. The interests of the plaintiff and those of the proposed class members are identical. Plaintiff is represented *inter alia* by counsel associated with a non-profit public interest law firm that includes attorneys highly experienced in federal class action litigation involving the U.S. Constitution and the Immigration and Nationality Act.

V

FACTUAL ALLEGATIONS

23. In 1996 Congress passed the IIRIRA, which amended portions of the Immigrant and Nationality Act, codified and amended at 8 U.S.C. §1103 & note. The

- 10 -                                        Complaint

IIRIRA mandated in pertinent part the construction of secondary border fencing in

defined areas of the U.S.-Mexico border. IIRIRA, §102 (b)(1). Congress empowered the

United States to acquire land for purposes of building the border fence as follows:

> (b)(2)  PROMPT ACQUISITION OF NECESSARY EASEMENTS.—
> The Attorney General, acting under the authority conferred in
> section 103(b) of the Immigration and Nationality Act (as inserted
> by subsection (d)), shall promptly acquire such easements as may
> be necessary to carry out this subsection . . .

IIRIRA, §102(b)(2).

24. The "inserted" Subsection (d)(1)(b) for land acquisition authority provides:

> (1) The Attorney General may contract for or buy any interest in land,
> including temporary use rights, adjacent to or in the vicinity of an
> international land border when the Attorney General deems the land
> essential to control and guard the boundaries and borders of the United
> States against any violation of this Act.

> (2) The Attorney General may contract for or buy any interest in land
> identified pursuant to paragraph (1) as soon as the lawful owner of that
> interest fixes a price for it and the Attorney General considers that price to
> be reasonable.

> (3) When the Attorney General and the lawful owner of an interest
> identified pursuant to paragraph (1) are unable to agree upon a reasonable
> price, the Attorney General may commence condemnation proceedings
> pursuant to the Act of August 1, 1888 (Chapter 728; 25 Stat. 357).

25. Congress amended the IIRIRA with the passage of the Secure Fence Act of

2006 (the "Secure Fence Act"). Pub. L. 109-367, 120 Stat. 2638 (2006).  The Secure Fence

Act, section 3(2),  provided Homeland Security Secretary Chertoff with additional

specifications about the type and precise locations of segments of the planned border

wall:

> (A) . . . [T]he Secretary of Homeland Security shall provide for [at] least 2
> layers of reinforced fencing, the installation of additional physical barriers,
> roads, lighting, cameras, and sensors . . .

> (iv) extending from 5 miles northwest of the Del Rio, Texas, port of entry
> to 5 miles southeast of the Eagle Pass, Texas, port of entry; and
> (v) extending 15 miles northwest of the Laredo, Texas, port of entry to the
> Brownsville, Texas, port of entry.

Complaint

26. The Congressional mandates concerning the border fence were most recently amended by the 2008 Appropriations Act, signed into law by President Bush on December 26, 2007. Pub. L. 110-161, 121 Stat. 2090 (2007).

27. The new law repeals the Secure Fence Act's direction to Secretary Chertoff about the precise locations where to build a border fence and designates to the Secretary the task of determining where border fencing would be most effective and practical taking into account the impact on the environment, culture, commerce, and quality of life for the communities and residents located near the sites at which such fencing may be constructed following consultation on these subjects with property owners and local governments on the border. 2008 Appropriations Act, §564(1)(A)-(D).

28. Additionally, the 2008 Appropriations Act clearly provides: "Nothing in this subparagraph may be construed to... affect the eminent domain laws of the United States or of any State." 2008 Appropriations Act, §564(1)(C)(ii)(II).

29. The 2008 Appropriations Act does *not* amend the earlier provision authorizing the Attorney General to obtain property as set forth in the IIRIRA §102(b)(2) and (d).

30. Plaintiff and the proposed class members were not timely or adequately consulted by Secretary Chertoff or his designees regarding (i) the precise interest that defendants seek regarding access to plaintiff's members' and class members' lands, including how much time defendants wish to access plaintiff's members' and class members' land, the expected property damage that may follow, the amount of equipment to be stored on plaintiff's members' and class members' land, the extent to which the land will be patrolled, etc., (ii) fixing an agreed upon price for the interest that defendants seek, or (iii) the impact on the environment, culture, commerce, and quality of life for the communities and residents located near the sites at which such fencing may be constructed.

Complaint

31. Defendants have failed to explain with precision the interests in or use of plaintiff's members' or class members' property they seek. Defendants have engaged in no such discussions with Plaintiff member entities, or their putative class members who executed agreements granting defendants a right of entry to their border properties without being informed about or aware of their right under the IIRIRA to negotiate a fixed price for the interest sought by the government in their land.

32. Defendants have also failed to negotiate in good faith with the property owners for the interest sought as required by the IIRIRA. Instead, defendants have made a blanket non-negotiable offer of one-hundred-dollars ($100.00) for each parcel of property, regardless of size, location or any other factor that would normally be considered by any entity seeking an interest in property, regardless of the purpose.

33. Nor have defendants re-assessed their planned Del Rio border fence or other fencing, or adequately consulted with plaintiff's members or putative class members as required by the 2008 Appropriations Act, §564(1)(A)-(D).

34. The government's so-called 2007 "town hall meetings" do not constitute consultation as mandated by the 2008 Appropriations Act and in any event were conducted before the Appropriations Act was enacted and addressed the now repealed Secure Fence Act of 2006 requirements rather than the requirements of the 2007 Appropriations Act. DHS has publicly claimed that it has held 18 town hall meetings about the border fence and has listed those in a document titled "Border Fence Construction Outreach," which it claims evidences its commitment to ongoing dialogue with members of the community that might be affected by construction of the fencing. But none of those meetings were held in the Rio Grande Valley, where 70 miles of fencing is proposed and at issue in this lawsuit. Members of the plaintiff Texas Border Coalition (TBC) have publicly called DHS's claim to have held town hall meetings "totally false" and its claimed public outreach a "joke."

Complaint

35. Defendants actions of accessing plaintiff's members' and putative class members' lands is highly likely to have significant adverse impacts on plaintiff's and putative class members' economic interests, environment, culture, and way of life, all matters the Secretary is required to consult about prior to taking an interest in property owners' lands and in effect commencing the process of building a wall in segments of the border identified by Congress in a now repealed law.

VI

IRREPARABLE INJURY

36. The plaintiffs' members and those similarly situated are threatened with or are suffering and will continue to suffer irreparable injury unless this Court orders the relief prayed for. Such injury includes, *inter alia*, violation of their clear statutory right to negotiation over a fixed price for the interest sought *before* any interest is sought through waivers of rights or condemnation actions in the courts, violation of their clear statutory right to consultation prior to the taking of any interest in their property, selection of their properties for rights of entry or condemnation based upon impermissible factors, clouding of their title to their properties, interference with their right to privacy, and interference with their normal and exclusive use of their property and homes. Damages cannot adequately address the threatened injuries or actual injuries suffered by plaintiff's members and proposed class members. The condemnation statutes provide for compensation for property loss, not violations of plaintiff's statutory and Constitutional rights. The Federal Tort Claims Act (FTCA) likely does not provide for damages for the types of violations alleged throughout this complaint, and its "discretionary function" waiver makes any claim for damages for the violations alleged herein through the FTCA highly speculative.

/ / /

Complaint

VII

FIRST CAUSE OF ACTION

Failure to Negotiate for a Fixed Priced

37. Plaintiff incorporates by this reference the allegations set out in ¶¶ 1-36 above as though fully re-alleged here.

38. In securing or attempting to secure waivers of plaintiff's property rights under the IIRIRA without informing plaintiff's members or their proposed class members of their right to negotiate a fixed price under § 102 of the IIRIRA, or engaging in such negotiations before seeking condemnation, defendants have violated and continue to violate § 102(b)(2) and (d) of the IIRIRA, 110 Stat. 2009-554, and the due process and equal protection guarantees of the Fifth Amendment to the United States Constitution.

VIII

SECOND CAUSE OF ACTION

Failure to issue or apply rules regarding negotiation for a fixed price

39. Plaintiff incorporates by this reference the allegations set out in ¶¶ 1-36 above as though fully re-alleged here.

40. Defendants' failure to issue or apply, or make available to plaintiff's members and other property owners, any rules, regulations, directives, guidelines, or instructions relating to how negotiations under § 102 of the IIRIRA should proceed or how a fixed price should be arrived at violates the Administrative Procedures Act §§ 5 U.S.C. 551 *et seq,* and the Fifth Amendment's guarantees of equal protection and due process of law.

IX

THIRD CAUSE OF ACTION

Unlawful Taking Pursuant to the DTA

41. Plaintiff incorporates by this reference the allegations set out in ¶¶ 1-36 above as though fully re-alleged here.

Complaint

42. In threatening to condemn and in actually condemning plaintiff's members' and other landowners' property pursuant to the DTA, 40 U.S.C. §3114, rather than the condemnation procedures at 40 U.S.C. §3113, defendants have violated and continue to violate the IIRIRA, 110 Stat. 2009-554, §102(d) which limits the government's taking authority to the "1888 Act" codified at 40 U.S.C. § 3113, and the due process and equal protection guarantees of the Fifth Amendment to the United States Constitution.

X

FOURTH CAUSE OF ACTION

Consultation under the 2008 Appropriations Act, 121 Stat. 2090

43. Plaintiff incorporates by this reference the allegations set out in ¶¶ 1-36 above as though fully re-alleged here.

44. In threatening to condemn and obtaining waivers of plaintiff's members' and other property owners' rights, and in actually condemning plaintiff's members' and putative class members' property, without meeting the consultation mandate set forth in § 564 of the 2008 Appropriations Act, defendants are violating and unless enjoined by this Court will continue to violate plaintiff's members' and other property owners' right to consultation as required by § 564, and to due process and equal protection guaranteed by the Fifth Amendment to the United States Constitution.

XI

FIFTH CAUSE OF ACTION

Failure to issue or apply rules regarding the 2008 Appropriations Act

45. Plaintiff incorporatse by this reference the allegations set out in ¶¶ 1-36 above as though fully re-alleged here.

46. Defendants' failure to issue or apply, or make known to plaintiff's members and other property owners, any rules, regulations, directives, instructions or guidelines to implement the consultation mandate set forth in § 564 of the 2008 Appropriations Act, violates the consultation requirement of § 564, the Administrative Procedures Act

Complaint

§§ 5 U.S.C. 551 *et seq,* and the due process and equal protection guarantee of the Fifth Amendment to the United States Constitution.

XII

SIXTH CAUSE OF ACTION

Violation of equal protection in selection of properties

47. Plaintiff incorporates by this reference the allegations set out in ¶¶ 1-36 above as though fully re-alleged here.

48. Defendants' targeting of properties for surveying and likely border-fence construction in a selective manner relating to political and other considerations not rationally related to the effective and practical considerations the government is statutorily required to consider when determining where to fence the border violates the equal protection guarantee of the Fifth Amendment to the United States Constitution.

XIII

SEVENTH CAUSE OF ACTION

Failure to exercise discretion regarding location of border wall

49. Plaintiff incorporates by this reference the allegations set out in ¶¶ 1-36 above as though fully re-alleged here.

50. Defendant Chertoff has failed to assess the most practical and effective locations for a border fence or wall as required by the 2008 Appropriations Act, and instead is moving forward to build the border wall or fence in the areas set forth in the now-repealed provisions of the Secure Fence Act of 2006, all in violation of the 2008 Appropriations Act.

XIV

PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court —

1. Assume jurisdiction over this action;

2. Declare that defendants' actions as alleged throughout this Complaint violate the IIRIRA as amended by the 2008 Appropriations Act and the due process and equal protection guarantees of the Fifth Amendment;

4. Issue injunctive relief requiring that defendants, their agents, employees, and successors in office comply with the IIRIRA as amended by the 2008 Act , and the taking clause and due process and equal protection guarantees of the Fifth Amendment to the United States Constitution;

5. Award plaintiffs costs of suit and attorney's fees reasonably incurred as a result of this lawsuit; and

/ / /

Complaint

6. Grant such further relief as the Court may deem just and proper.

Dated: May 16, 2008                 Respectfully submitted,

                                    Peter A. Schey (Cal Bar #58232)
                                    Carlos Holguin (Cal Bar # 90754)
                                    Center for Human Rights and Constitutional Law

By _____
        Peter Schey

Jim Tom Haynes (D.C. Bar #340422)

By _____
        Jim Tom Haynes

*Attorneys for Plaintiffs*

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

### I (a) PLAINTIFFS

Texas Border Coalition

88888

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF          88888
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Jim Tom Haynes
The Haynes Immigration Law Firm
1555 Connecticut Ave NW, Suite 200
Washington, DC 20036
Tel: (202) 293-3123

Peter Schey; Carlos Holguin
Center for Human Rights and Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057; Tel: (213) 388-8693

### DEFENDANTS

Michael Chertoff, Secretary of U.S. Department of Homeland Security;
Robert F. Janson, Acting Executive Director, Asset Management of U.S.
Customs and Border Protection

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

Case: 1:08-cv-00848
Assigned To : Walton, Reggie B.
Assign. Date : 5/16/2008
Description: General Civil

### II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
    Plaintiff

◎ 2 U.S. Government
    Defendant

○ 3 Federal Question
    (U.S. Government Not a Party)

○ 4 Diversity
    (Indicate Citizenship of
    Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/**
    **Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency**
    **Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
      Administrative Agency is Involved)

◎ **D. Temporary Restraining**
    **Order/Preliminary**
    **Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**          **OR**          ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
      defendant
☐ 871 IRS-Third Party 26
      USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
      of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
      Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
      Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
      Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
      Exchange
☐ 875 Customer Challenge 12 USC
      3410
☐ 900 Appeal of fee determination
      under equal access to Justice
☐ 950 Constitutionality of State
      Statutes
☒ 890 Other Statutory Actions (if
      not administrative agency
      review or Privacy Act

(4)

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>**\*(If pro se, select this deck)\*** | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>**\*(If pro se, select this deck)\*** | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

110 Stat. 2009-554, Sec. 102 (failure to negotiate); Administrative Procedures Act, Sec. 5 U.S.C. 551 (failure to consult; failure to issue regulations)

**VII. REQUESTED IN COMPLAINT** ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 — DEMAND $ Fees — Check YES only if demanded in complaint
JURY DEMAND: YES ☒ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE 5/16/08   SIGNATURE OF ATTORNEY OF RECORD _____

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.