UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                         )
TEXAS BORDER COALITION,                  )
                                         )
                Plaintiff,               )
                                         )
     v.                                  )
                                         )
JANET NAPOLITANO, SECRETARY,             )
UNITED STATES DEPARTMENT OF              )
HOMELAND SECURITY; ROBERT F.             )   Civil Action No. 08-0848 (RBW)
JANSON, ACTING EXECUTIVE                 )
DIRECTOR, ASSET MANAGEMENT               )
OF U.S. CUSTOMS AND BORDER               )
PROTECTION,                              )
                                         )
                Defendants.              )
                                         )
_____)

## MEMORANDUM OPINION

The plaintiff, the Texas Border Coalition, comprised of "a group of cities, counties, Chambers of Commerce, and Economic Development Commissions located proximate to the border between the United States and Mexico in the State of Texas," challenges, pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996) (codified in part at 40 U.S.C. §§ 3113-14 (2006)), section 564 of the Consolidated Appropriations Act for Fiscal Year 2008 ("2008 Appropriations Act"), Pub. L. No. 110-161, 121 Stat. 1844 (2007), the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-04 (2006), and the Due Process Clause, including its equal protection component, of the Fifth Amendment to the United States Constitution, the condemnation of land to construct a fence along part of the United States border with Mexico by the United States Department of

Homeland Security (the "Department"), Complaint ("Compl.") ¶¶ 1, 37-50. Currently before the Court is the defendants' motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that the Court lacks subject matter jurisdiction to hear the plaintiff's complaint, the plaintiff lacks standing to pursue this action, and the plaintiff has failed to state a claim upon which relief may be granted. Defendants' Motion to Dismiss ("Defs.' Mot.") at 1. The plaintiff opposes the motion.[1] For the foregoing reasons, the Court must dismiss the complaint.

---

[1] The Court considered the following papers filed in connection with this motion: Defendants' Motion to Dismiss ("Defs.' Mot."); Defendants' Memorandum in Support of Their Motion to Dismiss ("Defs.' Mem."); Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"); Defendants' Reply Memorandum in Support of Their Motion to Dismiss ("Defs.' Reply"); and Defendants' Notice of Supplemental Authority ("Defs.' Suppl.").

The Court's consideration of the Declaration of Donna S. Fitzgerald, as well as the exhibits accompanying that declaration, the defendants' reply and the defendants' supplement filing, does not obligate the Court to convert this motion into one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) because the exhibits consist entirely of court orders and excerpts from congressional acts, portions of which were incorporated by reference into the complaint and about which the Court can take judicial notice. See Fed. R. Evid. 201(b)-(c) ("A court may take judicial notice, whether requested or not" of any fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); see, e.g., Coleman v. Burnett, 477 F.2d 1187, 1198 (D.C. Cir. 1973) (where the Circuit Court "[e]xercis[ed] [its] power to judicially notice proceedings in related cases"); Andreen v. Lanier, 573 F. Supp. 2d 1, 3 n.1 (D.D.C. 2008) (finding that in a civil challenge to an alleged unlawful search "[t]he Court may take judicial notice of the search warrant and affidavit without converting the motion to dismiss into a motion for summary judgment"); see also Kramer v. Time Warner Inc., 937 F.2d 767, 773-75 (2d Cir. 1991) (noting that a court may consider matters about which judicial notice may be taken without converting a motion to dismiss into a motion for summary judgment); Nix v. Fulton Lodge No. 2, 452 F.2d 794, 797-98 (5th Cir. 1971) (finding that motion to dismiss is not converted into a motion for summary judgment when copies of court opinions are submitted for the Court's consideration); United States v. Fink, 393 F. Supp. 2d 935, 939 (D.S.D. 2005) ("[S]ince district courts may take judicial notice of public records, they may properly consider public records on a motion to dismiss.") (citing Stahl v. United States Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003)). Accordingly, the declaration attesting to the authenticity of the public records is unnecessary, and the Court need not, nor will it, substantively consider the content of the declaration, although it will take judicial notice of the court filings attached to the declaration.

Contrary to the defendants' urging, the plaintiff's complaint is not doomed due to the Court's lack of subject matter jurisdiction. The plaintiff has alleged both violations of federal law, including constitutional violations, Compl. ¶¶ 37-50, and is seeking mandamus relief against Department officials to the extent that other legal remedies are unavailable,[2] id. ¶ 9; Pl.'s Opp'n at 11-13. Therefore, the Court's authority to entertain the plaintiff's claims is derived from its federal question jurisdiction to address "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331 (2006), and its jurisdiction to hear "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff,"[3] 28 U.S.C. § 1361 (2006).

Nor is sovereign immunity a bar to this action. While

---

[2]  The plaintiff also maintains that the Court has subject matter jurisdiction under the APA, 5 U.S.C. § 702. Compl. ¶ 9; Pl.'s Opp'n at 5-6. This position is without merit. "With regard to the APA, while it may . . . appear[] to be a proper basis of jurisdiction . . . [,] the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." Andrus v. Charlestone Stone Prods. Co., 436 U.S. 604, 608 n.6 (1978) (internal citations and quotation omitted). Rather, the APA speaks to the government's waiver of its sovereign immunity against challenges to agency actions where the plaintiff is "seeking relief 'other than money damages.'" Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999) (quoting 5 U.S.C. § 702). It is 28 U.S.C. § 1331 that provides the Court with jurisdiction to hear a challenge to an agency's actions; the APA's waiver of sovereign immunity is distinct from that jurisdictional grant. Andrus, 436 U.S. at 608 n.6.

[3]  To the extent that the plaintiff seeks relief on the behalf of "other property owners" who are not part of its membership, Compl. ¶¶ 40, 42, 44, 46, the Court cannot adjudicate those claims due to the plaintiff's failure to demonstrate that it has a sufficient stake in a viable case or controversy involving such non-members. See Heckler v. Mathews, 465 U.S. 728, 738 (1984) ("In order to establish standing for purposes of the constitutional 'case or controversy' requirement, a plaintiff 'must show that [it] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' and that the injury 'is likely to be redressed by a favorable decision.'" (emphasis added and internal citations omitted)); see also Warth v. Seldin, 422 U.S. 490, 499 (1975) ("A federal court's jurisdiction therefore can be invoked only when the plaintiff [itself] has suffered 'some threatened or actual injury resulting from the putatively illegal action . . . .'" (citation omitted)).

> [n]either the general federal question statute nor the mandamus statute by itself waives sovereign immunity[,] . . . sovereign immunity does not apply as a bar to suits alleging that [a government] officer's actions were unconstitutional or beyond statutory authority, on the grounds that "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions."

Swan v. Clinton, 100 F.3d 973, 981 (D.C. Cir. 1996) (citations omitted).

However, while the Court cannot find fault with the plaintiff's invocation of the Court's jurisdiction, it nonetheless cannot reject the defendants' other challenges to the complaint because the plaintiff either lacks standing to pursue this action or has failed to plead any legally sustainable claims.  The primary barrier to the plaintiff maintaining this action is its lack of standing to pursue the relief sought, one of the tenets of establishing a justiciable case or controversy under Article III of the Constitution.  Lance v. Coffman, 549 U.S. 437, 439 (2007); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 573-74 (1992) ("[A] plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy.").  An organization like the plaintiff has standing only if "its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[4]  Friends of the Earth, Inc. v. Laidlaw Envtl.

---

[4]    Based on the plaintiff's representations in its complaint, Compl. ¶ 1, the Court assumes that the "the interests at stake are germane to [its] organization[al] purpose."  Friends of the Earth, 528 U.S. at 181.  Yet, even though the Court finds for the reasons set forth below that the plaintiff lacks standing based on traditional standing principles that prevent its members from individually
(continued . . .)

Servs. (TOC), Inc., 528 U.S. 167, 181 (2000) (citation omitted).  "[T]he question whether the litigant is a 'proper party to request an adjudication of a particular issue,' is one within the power of Congress to determine."  Sierra Club v. Morton, 405 U.S. 727, 732 n.3 (1972) (internal citation omitted) (stating that Article III forbids federal district courts from "render[ing] advisory opinions," "entertain[ing] 'friendly' suits," or "resolv[ing] 'political questions'" (internal citations omitted)).  "[S]tanding . . . requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation, and redressability."  Lance, 549 U.S. at 439.  The injury alleged must be "concrete and particularized," and not merely that "the law . . . has not been followed."  Id. at 439, 442.

With regard to the allegations asserted in all of the counts of the complaint, the IIRIRA authorizes the federal government to acquire an interest in privately-held, border-adjacent property for the purpose of constructing the congressionally mandated fence by either "contract[ing] for [it,] or buy[ing] [it,]" or "commenc[ing] condemnation proceedings."[5]  IIRIRA § 102(d)(1)(b)(2), (3);[6] see also 40 U.S.C. §§ 3113-14 (providing

---

pursuing the claims in the complaint, compare id. at 181-84 (citing specific member's assertions of injury), with City of Los Angeles v. Lyons, 461 U.S. 95, 106 (1983) (finding no realistic threat that alleged illegal conduct was likely to impact the plaintiff), the Court also finds as an alternative basis for its lack of standing ruling the fact that the "participation of [the] individual members in [this] lawsuit" may be necessary to establish how the defendants acted with respect to any specific member or members' property, because at least some of the claims arise from alleged multiple acts, see Compl. ¶ 38 (alleging that its members were not notified of their "right to negotiate a fixed price"); ¶ 42 (alleging multiple threats and actual acts of condemnation); ¶ 44 (alleging that multiple waivers were obtained without consultation as statutorily required); ¶ 46 (alleging that the defendants failed to "issue or apply, or make known to plaintiff's members . . . any rules, regulations, directives, instructions or guidelines" concerning implementation of a legislative mandate); ¶ 48 (alleging illegal "targeting of properties for surveying and likely border-fence construction").

[5]     To the extent that the plaintiff alleges in counts one and two of the complaint that the IIRIRA requires the defendants to inform the plaintiff's members of a right to negotiate a fixed price for the property where the defendants desire to construct the fence, Compl. ¶¶ 37-38 (alleging that the defendants failed to first "negotiate a fixed price . . . before seeking

(continued . . .)

5

that the federal government may acquire real estate "by condemnation, under judicial process, when the officer believes that it is necessary or advantageous to the Government to do so"). Through these statutory provisions, Congress prescribed the manner in which the Department could acquire the property, and implicitly granted the Department discretion to determine whether condemnation proceedings should be initiated to acquire the property needed to construct the fence. See 40 U.S.C. §§ 3113-14. Only upon the Department's determination will "judicial" condemnation proceedings commence,[7] id., and nothing in the statute permits a property owner to prevent the initiation of such

---

condemnation" violates the IIRIRA and the Fifth Amendment), id. ¶¶ 39-40 (alleging that the "[d]efendants' failure to issue or apply, or make available to plaintiff's members . . . any rules, regulations, directives, guidelines, or instructions relating to how negotiations under § 102 of the IIRIRA should proceed or how a fixed price should be arrived at violates the [APA] and the Fifth Amendment[] . . ."), the plaintiff plainly misconstrues the statute. The IIRIRA provides that "[t]he Attorney General may contract for or buy any interest in [border-adjacent] land identified . . . as soon as the lawful owner of that interest fixes a price for it and the Attorney General considers that price to be reasonable," IIRIRA § 102(d)(1)(b)(2) (emphasis added), but that process is not the only manner in which the Attorney General may acquire property to construct the fence. Rather, the very next section of the statute provides that if the Attorney General cannot agree on a price with the landowner, "the Attorney General may [also] commence condemnation proceedings." IIRIRA § 102(d)(1)(b)(3) (emphasis added). Thus, nothing in this statute commands the defendants to set a fixed price for land they desire to acquire. Indeed, condemnation is the alternative means of acquiring land and the setting of a fixed price by the Attorney General is not required prior to the initiation of the condemnation proceedings, as that its exactly what a court sitting in such proceedings will determine. See City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 712 (1999) (Kennedy, J., plurality opinion). Therefore, those counts of the complaint based on that theory cannot be maintained and must be dismissed as failing to state an actionable claim. Fed. R. Civ. P. 12(b)(6).

6       This section of the IIRIRA is not currently codified in the United States Code and will be referenced according to its IIRIRA section number.

7       Condemnation proceedings arise out of a landowner's right to compensation upon a government's seizure of the owner's property as required by the Fifth Amendment to the United States Constitution. "[W]hen the government initiates condemnation proceedings, it concedes the landowner's right to receive just compensation and seeks a mere determination of the amount of compensation due." City of Monterey, 526 U.S. at 712 (Kennedy, J., plurality opinion). "When the government initiates formal condemnation procedures, a landowner may question whether the proposed taking is for public use[,] . . . [and in doing so] seeks not to establish the government's liability for damages, but to prevent the government from taking his property at all." Id. at 713.

6

proceedings through injunctive relief or otherwise.  Moreover, the statutory framework of the IIRIRA provides for no other means of acquiring the property of an unwilling owner other than through the condemnation process.  It would make little procedural sense, and, indeed, thwart congressional will, to allow the plaintiff's members to preemptively challenge an anticipated condemnation when the Department's decision to pursue this course has not yet been rendered.[8]

Albeit addressed in a different context, the Supreme Court in Aircraft & Diesel Equip. Corp. v. Hirsch, 331 U.S. 752 (1947), explained why precipitous judicial intervention is prohibited when Congress has designed an administrative process for addressing a matter in the first instance:

> The very purpose of providing either an exclusive or an initial and preliminary administrative determination is to secure the administrative judgment either, in the one case, in substitution for judicial decision or, in the other, as foundation for or perchance to make unnecessary later judicial proceedings. Where Congress has clearly commanded that administrative judgment be taken initially or exclusively, the courts have no lawful function to anticipate the administrative decision with their own, whether or not when it has been rendered they may intervene either in presumed accordance with Congress' will or because, for constitutional reasons, its will to exclude them has been exerted in an invalid manner. To do this not only would contravene the will of Congress as a matter of restricting or deferring judicial action. It would nullify the congressional objects in providing the administrative determination. In this case these include securing uniformity of administrative policy and disposition, expertness of judgment, and finality in

---

[8] It is for this same reason that the plaintiff cannot maintain an APA challenge, as the plaintiff has cited no judicially reviewable final agency action. 5 U.S.C. § 704; see Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt., 460 F.3d 13, 18 (D.C. Cir. 2006) (finding that absent a final agency action, "the action is not reviewable" under Federal Rule of Civil Procedure 12(b)(6)).

> determination, at least of those things which Congress intended to and could commit to such agencies for final decision.

Id. at 767-68 (emphasis added and footnote omitted);[9] cf. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 & n.9 (1938) ("[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted;" and "the rule is one of judicial administration – not merely a rule governing the exercise of discretion – [and] it is applicable to proceedings at law as well as suits in equity."); First Nat'l Bank of Greeley v. Bd. of Comm'rs of Weld County, Colo., 264 U.S. 450, 453 (1924) (holding that "the plaintiff did not exhaust its remedies before the [state] administrative boards, and consequently cannot be heard by a judicial tribunal to assert the [constitutional] invalidity of the tax") cited in Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 108 n.5 (1981). What the Supreme Court proscribed in Hirsch is exactly what the plaintiff would have this Court do here. The Court must therefore conclude that counts one through three of the complaint have been filed prematurely and accordingly the Court must decline to entertain them.[10]

---

[9] In its complaint, the plaintiff alleges, at least as of the time of its filing, that a condemnation proceeding had been initiated against one of its members by the Department. Compl. ¶ 1. Nowhere does the plaintiff allege that the condemnation proceeding has been completed, or that the member is unable to challenge the Department's underlying authority or the procedural propriety of the Department's decision to initiate the proceeding, which are essentially the claims asserted here. Nor does the complaint allege that the condemnation proceeding itself has been unfair. In fact, the defendants have identified other district court orders in condemnation proceedings conducted under the IIRIRA showing that landowners, defendants in those cases, made the same challenges as the plaintiff attempts to preemptively assert here. Defs.' Mem., Attachment (Fitzgerald Declaration) at Ex. 7; Defs.' Suppl., Ex. 1.

[10] Under the principle of standing, it is also immediately apparent that to the extent the sixth count of the complaint alleges a Fifth Amendment violation due to the defendants' decision concerning the location of the fence having been based on "political and other considerations[,] [and] not . . . effective and practical considerations," Compl. 48, and the seventh count alleges a violation of the 2008 Appropriations Act due to the alleged failure of Defendant Chertoff to

(continued . . .)

8

Moreover, with respect to all counts of the complaint, the plaintiff has not demonstrated that any of its members have suffered or are actually likely to suffer any concrete injury, or that there is a likelihood that their alleged injury can be redressed through a favorable decision by this Court, both necessary to establish the plaintiff's standing to bring this action.  These elements of standing are lacking because it is unclear from the complaint whether any of the property owned by the plaintiff's members will actually be condemned, and therefore the Court cannot conclude that the plaintiff's members "personally . . . suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," or that the injury "is likely to be redressed by a favorable decision," as a ruling by the Court may not actually have any impact on the plaintiff's members.  Heckler, 465 U.S. at 738 (citations and internal quotations omitted); see also Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807-08 (2003) (holding that the doctrine of ripeness ensures that courts do not undertake "premature

---

"assess the most practical and effective locations for a border fence or wall," id. ¶ 50, that a nonjusticiable political question inappropriate for judicial review is being raised.  This conclusion is called for with respect to count six because the plaintiff has offered, and the Court can identify, no "discoverable and manageable standards" for assessing the appropriateness of the defendants' determination, Baker v. Carr, 369 U.S. 186, 217 (1962) cited in Vieth v. Jubelirer, 541 U.S. 267, 277-78 (2004), in light of Congress' decision to permit the Secretary of the Department to determine where the "fencing would be most practical and effective," 2008 Appropriations Act § 564(2)(A).  And, it is called for with respect to count seven based on the absence of any benchmark for this Court to evaluate what is "practical and effective."  Compl. ¶ 50.  Where Congress has delegated to an agency the authority to implement a congressional act, the courts have limited authority to question the decisions of the agency where those decision substantially comply with Congress' directives.  Cf. Gonzales v. Oregon, 546 U.S. 243, 255 (2006) (describing the deference afforded to "[e]xecutive actors [that] often must interpret the enactments Congress has charged them with enforcing and implementing"); Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").  For the Court to second-guess the Secretary's decision, it would have to make "policy determination[s] of a kind clearly for nonjudicial discretion" and thereby disregard the "respect due coordinate branches of government."  Baker, 369 U.S. at 217.

adjudication" by forbidding judicial adjudication of "'abstract disagreements over administrative policies . . . until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967))). Therefore, due to the plaintiff's attempt to adjudicate these issues before it can even be determined whether any of its members will be harmed by the defendants' decision concerning where the fence will be constructed, the Court must decline to entertain the issues at this time.

Further, the complaint fails to cite any legal authority that supports counts two and five of the complaint, which would obligate the Department to either "issue or apply, or make available . . . any rules, regulation, directives, guidelines, or instructions" with respect to negotiations between the government and the plaintiff's landowner members, how to arrive at a fixed price, or the obligatory consultation procedures envisioned by the 2008 Appropriations Act. Compl. ¶¶ 40, 46. But it is for Congress, not the judiciary, to impose rulemaking obligations on federal agencies. Accordingly, these counts of the complaint, which seemingly ask the Court to impose such an obligation on the defendants, must also be dismissed based on this request pursuant to Federal Rule of Civil Procedure 12(b)(6).

To the extent that plaintiff alleges violations of the 2008 Appropriations Act in counts four and five of the complaint, see Compl. ¶¶ 43-46 (alleging that the defendants' "threaten[ed] to condemn and obtain[ed condemnation] waivers . . . and . . . actually condemn[ed] . . . property" without consulting with landowners pursuant to section 564 of the 2008 Appropriations Act), id. ¶¶ 45-46 (alleging that the "[d]efendants[] fail[ed] to issue or apply, or make known . . . any rules, regulations, directives, instructions or

10

guidelines to implement the consultation mandate set forth in § 564 of the 2008 Appropriations Act"), id. ¶¶ 49-50 (alleging that the Secretary "failed to assess the most practical and effective locations for a border fence or wall as required by the 2008 Appropriations Act"), these claims are also unable to survive the defendants' Rule 12(b)(6) challenge for the following reasons.  First, the plaintiff alleges that the defendants failed to consult with them prior to initiating their condemnation procedures pursuant to the 2008 Appropriations Act.  Id. ¶¶ 43-46.  While the 2008 Appropriations Act does provide, in pertinent part, that

> the Secretary of Homeland Security shall consult with . . . local governments, Indian tribes, and property owners in the United States to minimize the impact on the environment, culture, commerce, and quality of life for the communities and residents located under the sites at which such fencing is to be constructed[,]

§ 564(2)(C)(i), the law makes clear that "[n]othing in this subparagraph may be construed to . . . create or negate any right of action for a State, local government, or other person or entity affected by this subsection," § 564(2)(C)(ii) (emphasis added).  In other words, the plaintiff seeks to pursue a claim for which no private right of action or private remedy has been created.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 283-84 (2002) (finding with respect to 42 U.S.C. § 1983, that "[t]he question whether Congress . . . intended to create a private right of action [is] definitively answered in the negative where a statute by its terms grants no private rights to any identifiable class[,] and . . . . a plaintiff suing under an implied right of action still must show that the statute manifests an intent to create not just a private right but also a private remedy." (emphasis in original) (internal citations and quotations omitted)); cf. Alexander v. Sandoval, 532 U.S. 275, 291 (2001) ("But it is most certainly incorrect to say that language in a regulation can conjure up a private

cause of action that has not been authorized by Congress."). Further, the plaintiff fails to provide any authority upon which it can maintain a claim that the defendants must "issue or apply . . . rules, regulations, directives, instructions or guidelines to implement the consultation mandate set forth in § 564 of the 2008 Appropriations Act." Compl. ¶ 46. Neither the APA nor the Fifth Amendment, under which the plaintiff brings these claims, require the defendants to undertake such procedures.

For the reasons already expressed, counts one through six of the complaint, which allege under the Fifth Amendment's Due Process Clause that the defendants have violated the plaintiff's members' rights to due process and equal protection,[11] fail for two reasons. First, the claims fail based on the principles of ripeness and standing, as already discussed. Second, the claims fail because to the extent the defendants' conduct creates a justiciable controversy, there was a rational basis for it and the plaintiff's members, so far as the Court can tell, have been provided with sufficient notice and a process for challenging any attempted government taking.

As to the plaintiffs' procedural due process argument, the plaintiffs have failed to demonstrate an improper deprivation of a constitutionally protected interest. "The United States has the authority to take private property for public use by eminent domain, but is

---

[11] The Fifth Amendment implicitly includes a right of equal protection as part of its due process guarantee. Accordingly, the Supreme Court ruled:

> Although the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is so unjustifiable as to be violative of due process. Thus, if a classification would be invalid under the Equal Protection Clause of the Fourteenth Amendment, it is also inconsistent with the due process requirement of the Fifth Amendment.

Johnson v. Robison, 415 U.S. 361, 366 n.4 (1974) (internal citations omitted).

12

obliged by the Fifth Amendment to provide 'just compensation' to the owner thereof." Kirby Forest Indus. v. United States, 467 U.S. 1, 9 (1984) (internal citation omitted).  The Due Process Clause of the Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V. Essentially "due process" means that a person deprived of a property interest, as alleged here, is entitled to "notice and an opportunity to be heard."  See United States v. James Daniel Good Real Prop., 510 U.S. 43, 48 (1993) (addressing the right to a pre-seizure hearing in the context of civil forfeiture proceeding).  While due process "is a flexible concept that varies with the particular situation," a constitutional right to due process is generally satisfied by a pre-deprivation hearing.  Zinermon v. Burch, 494 U.S. 113, 127 (1990) (citations omitted).

The plaintiff argues that the "[t]he [g]overnment must apply minimally coherent standards in evaluating the reasonableness of [the] prices" sought by the landowners for their property and must have "some type of guidelines, rules, or regulations," otherwise it contends that its members' procedural due process rights are compromised.  Pl.'s Opp'n at 26-27.  Yet, as the defendants point out, the IIRIRA does not preclude the government from utilizing the Declaration of Taking Act, 40 U.S.C. § 3114, and does not obligate the defendants to implement rule-making procedures.  Defs.' Mem. at 17, 21.

Indeed, as the plaintiff outlines in its legal memorandum, the process available to the property owners whose land is subject to acquisition under the IIRIRA is set forth in the IIRIRA itself, the Declaration of Taking Act, and the General Condemnation Act of 1888, 40 U.S.C. § 3113.  Pl.'s Opp'n at 30-33.  Whether the government proceeds under the Declaration of Taking Act or ordinary condemnation proceedings is of no moment,

because a taking under the Declaration of Taking Act is merely a proceeding "ancillary or incidental" to ordinary condemnation procedures, and does not preclude the plaintiff's members from asserting their rights otherwise available to them in ordinary condemnation proceedings, including the right to challenge the legitimacy of the taking. Catlin v. United States, 324 U.S. 229, 240 (1945); see also United States v. 1.04 Acres of Land, 538 F. Supp. 2d 995, 1007 (S.D. Tex. 2008) (finding that the procedures pursuant to the Declaration of Takings Act were inherently available to the government in conjunction with Congress' grant to authority to condemn under 40 U.S.C. § 3113). Given that the plaintiff's members are entitled to the protections afforded in the condemnation proceedings in all takings that may be at issue in this case, see 40 U.S.C. § 3113; City of Monterey, 526 U.S. at 712-13, the Court cannot say that those procedures, which include notice and an opportunity to be heard before a judiciary tribunal, offend due process.  Further, the plaintiff has pointed to no authority requiring the defendants to initiate rule-making procedures related to the IIRIRA, so the Court also cannot find a constitutional violation has occurred on that basis.  See Capital Network Sys., Inc. v. F.C.C., 3 F.3d 1526, 1530 (D.C. Cir. 1993) (citation omitted) ("Indeed, our most recent case to address the issue found that agency refusals to initiate rulemaking proceedings are reviewed 'with a deference so broad as to make the process akin to non-reviewability.'").

Likewise, the plaintiff's argument under the equal protection component of the Fifth Amendment's Due Process Clause does not survive the defendants' motion to dismiss.  As already stated, the Fifth Amendment's guarantee of equal protection mirrors the equal protection rights provided by the Fourteenth Amendment.  Johnson, 415 U.S. at 366 n.4.  "Equal Protection . . . commands that no State shall 'deny to any person within

its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)); see San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 542 n.21 (1987) (noting that the Fifth Amendment's equal protection component applies to the federal government). In the absence of any claims of distinction having been made based on "race, alienage, or natural origin," and none is asserted in this litigation, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Cleburne Living Ctr., 473 U.S. at 440 (analyzing the Equal Protection Clause of the Fourteenth Amendment); see Weinberger v. Wiesenfeld, 420 U.S. 636, 638, n.2 (1975) (citations omitted) ("Th[e] Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment.").

  While the plaintiff has classified itself as a group of municipalities and landowners along the United States boarder with Mexico, it is somewhat unclear as to which component of its membership the equal protection theory applies, given that not all of the plaintiff's members have alleged that their land was subject to the condemnation process, and given that "courts have never found in the Equal Protection Clause any per se rule of territorial uniformity." Spivey v. Barry, 665 F.2d 1222, 1233 (D.C. Cir. 1981) (internal quotations omitted) (citing San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 54 n.110 (1973)). The plaintiff's opposition brief attempts to clarify the murkiness of the complaint on this point by alleging that some "politically connected" landowners

15

were not subject to the IIRIRA. Pl.'s Opp'n at 40. However, the plaintiff's unsupported and conclusory allegations are not enough to give this Court cause to question the defendants' decision concerning the location of the fence, especially where many of the plaintiff's members are government officials or municipalities, which in the absence of actual evidence of disparate treatment gives the Court pause as to whether individuals and entities with such status would be treated in a discriminatory manner. See Bois v. Marsh, 801 F.2d 462, 466 n.5 (D.C. Cir. 1986) (noting, in the equal protection context, that "vague allegations, especially when unsupported by an affidavit or other evidence . . . are insufficient to state a claim"). The Court is doubtful that the plaintiff can even establish the predicate for an equal protection claim based on the theory that its members were treated differently than similarly situated property owners, because by virtue of the fact that the fence must run along the border between the United States and Mexico, its location is all but pre-determined and comparison with other property owners whose property does not border Mexico is not instructive. Accord Hodel v. Indiana, 452 U.S. 314, 332 (1981) (citations omitted) (finding that "statute's lack of uniform geographic impact" is not in itself indicative of irrationalness or arbitrariness under an equal protection analysis). In any event, even if the plaintiff could establish that its members were singled out, as well as quell the Court's concern that its equal protection claim presents a political question unfit for judicial resolution, the Court does not find that the law is either facially discriminatory, designed to accomplish a discriminatory result, or enforced or applied in a discriminatory manner so as to violate equal protection guarantees. Indeed, the underlying predicate for the IIRIRA's adoption has a rational basis – the protection of the nation's boarder with Mexico – and all the Court can discern

16

from the complaint is that the property owners potentially affected by the statute are those who possess property bordering Mexico. The Court cannot infer from the allegations of the complaint that the Secretary is applying the law in an irrational manner or selecting a fence location that does not have the intended proximity to the Mexican border, and indeed, the plaintiff has made no such allegation. In fact, the Secretary has adopted the exact fence location originally intended by Congress, Compl. ¶ 50, which appears, in the absence of any proof to the contrary, to be a "debatabl[y]" "reasonabl[e]" decision, the motives for which the Court will not further question. Spivey, 665 F.2d at 1233; see also United States v. Carolene Prods. Co., 304 U.S. 144, 154 (1938).

## CONCLUSION

For all of the reasons set forth above, the Court concludes that the plaintiff either does not have standing to pursue this action or has not stated a viable claim, and this case must therefore be dismissed.[12]

---

[12] An Order consistent with this Memorandum Opinion was issued on March 27, 2009.